IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


ALBERT F. LANKSTER,                    :

        Plaintiff,                     :

vs.                                    : CIVIL ACTION NO. 11-00434-WS-B

ANDRO WILLIAMS, et *al.,*              :

        Defendant.                     :

## REPORT AND RECOMMENDATION

Plaintiff, who is proceeding pro se and in forma pauperis, filed a Complaint against the Board of Education for the City of Linden, Alabama, Football Coach Andro Williams, and the City of Linden Police Department (Doc. 1). This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Upon careful review, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted, and that Plaintiff's amendments be denied as futile.

**I. Amended Complaint (Doc. 5)**

In Lankster's original Complaint (Doc. 1), he alleged that on May 9, 2011, the Football Coach at the Linden City School had a letter delivered to him which informed him that if he came on

the school premises he would "be arrested for trespassing and prosecuted to the full extent of the law." (Id.)  Upon review the undersigned determined that Plaintiff's Complaint was deficient because it did not provide Defendant fair notice of Plaintiff's claims, and the grounds upon which they rested. (Doc. 4).   Accordingly, Plaintiff was directed to file an amended complaint which set forth a short and plain statement of his claims, and which set forth the basis for the Court's jurisdiction.

Pursuant to the Court's directive, Plaintiff filed an Amended Complaint (Doc. 5).  Plaintiff's Amended Complaint includes a number of disjointed factual allegations. As best the Court can discern, Plaintiff asserts that he has been hitting golf balls at the high school athletic field in Linden, Alabama for three or four years, that on or about May 6, 2011, he discovered a dead cat on the field, that he decided to bury the cat on the field because in the past, the City had refused his telephone requests seeking to have dead animals (near his house) removed, that Linden Police Chief Scott McClure was called to the scene but did not arrest Plaintiff, and that Plaintiff was given a Trespass Notice[1] on May 9, 2011, which reads as follows:

---

[1] According to Plaintiff, the Notice was issued by Defendant Andro Williams, the football coach; however, the signature is not legible on the copy filed with the Court. (Doc. 5 at p. 16).

This letter is to inform you that you are, from
this day forward, trespassed from the property
of Linden City School. Said property being located
at MLK Dr. Practice football field. If you return
to this residence and/or premises at anytime
after receiving this notice, you will be
arrested for trespassing and prosecuted to
the full extent of the law.

I trust you understand and will cooperate with
the intent of this letter.

(Doc. 5 at p. 16).

Plaintiff asserts that the letter violates his rights under the First, Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and the Alabama Constitution. According to Plaintiff, the First Amendment grants him the right to peacefully assemble, the Fifth Amendment prohibits deprivation of liberty without due process of law, the Sixth Amendment requires that he be informed of the nature and cause of the accusation, and the Fourteenth Amendment grants him liberty. Plaintiff's Amended Complaint also contains several pages of what he labels as "background" facts regarding his litigation history with the City of Linden.

In his prayer for relief, Plaintiff requests $100 for abating the nuisance, $100 reimbursement for travel expenses incurred driving to the federal court in Mobile to file the Complaint, $150 for the cost of producing and typing the Complaint, future costs and punitive damages.

## II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding in forma pauperis, the Court is reviewing his Amended Complaint (Doc. 5) under 28 U.S.C. § 1915(e)(2)(B).[2]  Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32 (1989).  A claim is frivolous as a matter of law where, inter alia, the defendants are immune from suit, id. at 327, 109 S.Ct. at 1833, or the claim seeks to enforce a right that clearly does not exist.  Id.

In addition, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  In order to state a claim upon which relief can be granted, there must be "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).  "[W]hen the plaintiff pleads factual

---

[2]The frivolity and the failure-to-state-a-claim analysis contained in Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989), was unaltered when Congress enacted 28 U.S.C. § 1915(b)(2)(B) in 1996.  Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.), cert. denied, 534 U.S. 1044 (2001).  However, dismissal is now mandatory under § 1915(e)(2)(B). Id. at 1348-49.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" a claim is facially plausible.  Id.  Plausibility requires more than the possibility that the defendant engaged in unlawful conduct.  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of conduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  Id. at ___, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)(requiring that the statement of the claim show that the pleader is entitled to relief)).  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at ___, 129 S.Ct. at 1949.  Additionally, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is warranted.  Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct. 910, 920-21 (2007).

When considering a pro se litigant's allegations, a court gives them a liberal construction holding them to a more lenient standard than those of an attorney.  Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972).  However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action."  GJR Investments v. County of Escambia,

5

Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010) (observing Iqbal's overruling of GJR Investments' heightened pleading standard). Furthermore, a pro se litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure." Moon v. Newsome, 863 F.2d 835, 837 (11th Cir.), cert. denied, 493 U.S. 863 (1989).

### III. Discussion

Although Plaintiff has not specified in his Amended Complaint, the Court assumes that he is bringing this action pursuant to 42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must allege and ultimately prove that (1) the defendants deprived him of a right secured under the United States Constitution or federal law, and that (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, the plaintiff must allege and establish an affirmative causal connection between the defendants' conduct and the constitutional deprivation. Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2005). Thus, the initial question in a § 1983 action is whether the plaintiff has alleged a

6

deprivation of a constitutional right. See County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5, 118 S. Ct. 1708, 140 L. Ed. 1043 (1998)("[a]s in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated").

As best the Court can discern, Plaintiff claims that his constitutional rights were violated by the issuance of the "no trespass" letter on May 9, 2011. Specifically, Plaintiff claims that his due process rights were violated because he was not provided a hearing before the "no trespass" letter was issued. The Due Process Clause of the Fourteenth Amendment protects against the arbitrary deprivation of life, liberty, and property without due process of law[3]. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1993). To succeed on a § 1983 claim based on the Due Process Clause, Plaintiff must establish that a state actor acting under color of state law deprived him of rights secured by the Due

---

[3]The Fourteenth Amendment states in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> U.S. Const. amend. XIV

Process Clause. <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1303 (11th cir. 2001)

The success of due process arguments depends upon the finding of a constitutionally protected property right or of a liberty interest having been infringed upon by the State; absent such interest, no due process protections attach. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 569-70, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972). A person claiming a property interest in a benefit "must have more than an abstract need or desire for it . . . . He must . . . have a legitimate claim of entitlement to it." <u>Id.</u> at 577. Moreover, property interests, by their nature, are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." <u>Id.</u>

Courts have held that members of the general public have neither a liberty nor property interest in being present on a school campus, and absent such an interest, they are not entitled to the procedural due process protections of the Fourteenth Amendment. <u>See</u> <u>Porter v. Duval County School Board</u>, 406 Fed. Appx. 460 (11th Cir. 2010); <u>Lovern v. Edwards</u>, 190 F.3d 648, 655-56 (4th Cir. 1999)(affirming dismissal of non-custodial parents claim that prohibiting him from entering school property violated his due process rights as frivolous); <u>Souders v.</u>

Lucero, 196 F. 3d 1040, 1046 (9th Cir. 1999)(plaintiff failed to establish that he had a constitutionally-protected interest in having access to a university campus; thus, there was no need to decide whether procedures employed to exclude the plaintiff were adequate).

In Porter, the Eleventh Circuit held that parents do not have a constitutional right to access to school premises. Porter, 460 Fed. Appx. at 462; see also Lovern, 190 F.3d at 656; Holbach v. Jenkins, 2009 U.S. Dist. Lexis 67525, *15-16 (D.N.D. July 15, 2009). "School officials have the authority to control students and personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property." Porter v. Duval County School Board, 2010 U.S. Dist. Lexis 29399 (M.D. Fla. Mar. 26, 2010)(citations omitted). In this case, Lankster has not alleged that he was employed by the school at the time of the incident and, based on the allegations in his Amended Complaint, it appears that at the time of the issuance of the "no trespassing" letter, his status was that of a member of the general public.  As a result, he has failed to demonstrate the existence of a liberty or property interest. Porter, 406 Fed. Appx. at 462.  Accordingly, his due process claim is due to be dismissed for failure to state a claim upon which relief can be granted.

**B.   Equal Protection**

Lankster has also failed to state a cognizable Equal Protection claim. Under the Equal Protection Clause of the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1.   To establish a claim cognizable under the Equal Protection Clause, Plaintiff must demonstrate that he is similarly situated with other persons who were treated differently and that the reason for the differential treatment was based on race, religion, national origin, poverty or some other constitutionally protected interest. Jones v. Ray, 279 F.3d 944, 947 (11th Cir. 2001).   In this case, Lankster has not alleged, let alone demonstrated, that anyone engaged in similar activity as him, and was treated differently based on their race, religion, or some other constitutionally protected interest. Thus, this claim fails as a matter of law.

**C.   First Amendment claim**

Lankster has also failed to state a First Amendment claim. The First Amendment, applicable to the States through the Fourteenth Amendment[4], states that "Congress shall make no law .

---

[4]   It has long been established that the First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States. Edwards v. South Carolina, 372 U.S. 229, 235, 83 S. Ct. 680, 683, 9 L. ED. 2d 697 (1963); Childs v. DeKalb Cty, Ga., 286 Fed. Appx. 687 (11th Cir. 2008).

. . abridging the freedom of speech, . . . or the right of the people peaceably to assemble . . . ." U.S. Const. amend. I.   In the First Amendment context, the Supreme Court has recognized two types of associational freedoms.   Roberts v. United States Jaycees, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.   In this respect, freedom of association receives protection as a fundamental element of personal liberty.   In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment--speech, assembly, petition for the redress of grievances, and the exercise of religion.   Id. at 617-18.

Although it is not clear from Plaintiff's Amended Complaint whether he is alleging an "intimate association" or an "expressive association,"[5] the undersigned finds that he has not

---

[5] The reason for extending First Amendment protection to the right of expressive association is because an individual's right to speak is often exercised most effectively when combined with other voices. Rumsfeld v. Forum for Academic and Institutional Rights, Inc., 547 U.S. 47, 68, 126 S. Ct. 1297, 164 L. Ed. 2d
(Continued)

alleged facts sufficient to state a claim for either.   In his Amended Complaint, Lankster alleges that by barring him from the school, the defendants have violated his right to assemble. However, his Amended Complaint is totally devoid of any facts that suggest that in visiting the athletic field, Lankster was seeking to enter or maintain an intimate relationship with anyone or that he was seeking to assemble in order to combine his voice with others.   Instead, Lankster alleges that he was on the athletic field to hit golf balls.   Viewing these facts in the light most favorable to Lankster, they fail to state a claim under the First Amendment.

---

156 (2006).  An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward *those ends* were not also guaranteed.  See, e.g., Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley, 454 U.S. 290, 294, 102 S. Ct. 434, 436, 70 L. Ed. 2d 492 (1981*)*. "According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority. (Citations omitted).  Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts v. U.S. Jaycees, 468 U.S. 609, 622, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (l984)(emphasis added) (citations omitted).

**D.   Sixth Amendment claim**

In his Amended Complaint, Plaintiff also asserts that his Sixth Amendment rights were violated because the "no trespass" letter did not advise him of the "nature" and the "cause of accusation." The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. CONST. amend VI.

Plaintiff's claim for a violation of the Sixth Amendment is frivolous because the Sixth Amendment has no applicability to a civil case. <u>Briggs v. Wall</u>, 2009 U.S. Dist. LEXIS 117294 (D.R.I. Dec. 16, 2009);(unpublished) ("[T]he Sixth Amendment . . . is not applicable to a plaintiff's pursuit of civil actions."); <u>Bailey v. Sys. Innovation, Inc.</u>, 852 F.2d 93, 97 (3rd Cir. 1988)("The sixth amendment, by its terms, is applicable only to criminal actions[.]"). Thus, this claim should be dismissed as frivolous.

**IV. Amendments (Docs. 6, 7)**

Plaintiff has filed two purported amendments to his Amended Complaint. In one amendment, Plaintiff seeks to add LaTonja Bruno as a Defendant. (Doc. 6). In the second amendment, Plaintiff claims that the City of Linden caused major structural damage to his home, falsely arrested him, harassed him, and subjected him to malicious abuse of legal process. (Doc. 7). Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiff may amend his complaint once as a matter of course. Thereafter, leave of Court is required. Fed.R.Civ.P. 15. Leave to amend a complaint "shall be freely given when justice so requires." FED.R.CIV.P. 15(a); see Shipner v. Eastern Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989). "[T]he district court may consider such factors as 'bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment.'" Nolin v. Douglas County, 903 F.2d 1546, 1550 (11th Cir. 1990) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962)), overruled on other grounds, McKinney v. Pate, 20 F.3d 1550, 1559 (11th Cir. 1994). Permission to amend may be denied when the claim, as amended, is subject to dismissal. See Halliburton & Assoc. v. Henderson, Few & Co., 774 F.2d 441, 444 (11th Cir. 1985).

14

In Plaintiff's Amendment relating to LaTonja Bruno, he has not alleged any facts which provide a basis for adding her to this lawsuit. Simply put, Plaintiff has not alleged any facts which suggest that LaTonja Bruno is a state actor or that she played any role in his receipt of the "no trespass" letter. Indeed, Plaintiff's only allegations relating to Ms. Bruno appear to relate to a harassment complaint that she filed against him in state court. The undersigned is unable to discern any conceivable cause of action based upon Plaintiff's allegations[6]. Accordingly, Plaintiff's purported claim against LaTonja Bruno should be denied.

In his Amendment filed on January 5, 2012 (Doc. 7), Plaintiff attempts to add claims against the City of Linden, AL relating to alleged structural damage to his home and his arrest in 2009. This is the second instance in which Plaintiff has sought to raise his structural damage claim with this Court. The Court's docket reflects that in an action styled Albert F. Lankster v. City of Linden, Ala., Civil Case No. 09-002500-CG-N,

---

[6] Plaintiff has not alleged that any judicial proceeding terminated in his favor; thus, he cannot establish a malicious prosecution claim against Ms. Bruno. Delchamps v. Inc. v. Bryant, 738 So. 2d 824, 831-32 (Ala. 1999)(to establish the common law tort of malicious prosecution, the plaintiff is required to establish (1) a judicial proceeding initiated by the defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused).

the Court dismissed as frivolous Plaintiff's structural damage claim against the City of Linden. Specifically, the Court found that the Marengo County Circuit Court had previously entered summary judgment in favor of the City of Linden on Plaintiff's structural damage claim, and as a result, this Court lacked subject matter jurisdiction over Plaintiff's Complaint under the Rooker-Feldman doctrine. See Civil Case No. 09-00250-CG-N (Docs. 12, 16). Because this issue has been decided against Plaintiff, res judicata prevents the relitigation of the same issue[7]. Thus, Plaintiff's attempt to add the structural damage claim should be denied as futile.

As noted, Lankster also seeks to bring false imprisonment and malicious prosecution claims against the City of Linden. However, Lankster does not allege that he was ever arrested or prosecuted in connection with the "no trespass" order. The only arrest referenced by Plaintiff occurred in 2009 when Lankster

---

[7] The doctrine of res judicata bars a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties are the same in both suits; and (4) the prior and present causes of action are the same. See Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003) (internal citations and quotations omitted). The bar "pertains not only to claims that were raised in the prior action . . . but also to claims that could have been raised previously." Id. (citation omitted) In determining if "prior and present causes of action are the same, we must decide whether the actions arise out of the same nucleus of operative fact, or are based upon the same factual predicate." Id. (internal citations and quotations omitted).

was apparently arrested for disorderly conduct following the arrest of his brothers. (Doc. 5, ps. 7-8).  Viewing Lankster's pleadings in the light most favorable to him, he has failed to state a false imprisonment and malicious prosecution claim against the City of Linden. A municipality such as the City cannot be held liable under § 1983 for the acts of its employees under a theory of *respondeat superior*. See Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). A municipality may only be held liable under §  1983 where there is a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Canton, 489 U.S. at 385; see also Bd. of County Comm'rs v. Brown, 520 U.S. at 404. Specifically, a plaintiff may seek to establish a municipality's liability by identifying "either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." Grech v. Clayton County, Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).  In this case, Lankster has not alleged, let alone demonstrated, that his arrest and prosecution took place pursuant to any city custom, policy, or practice.  To the contrary, Lankster contends that "[t]he direct and proximate cause of these unlawful arrests was

17

revenge sought by Police Officer Dexter Watters because the Lanskter's signed a petition demanding that officer Watters be terminated."). Assuming arguendo the truth of Lankster's allegations, they are not sufficient to state a claim against the City of Linden for false arrest and malicious prosecution. Thus, these claims are futile.

## IV.  Conclusion.

For the reasons set forth herein, the undersigned recommends that this action be dismissed pursuant to § 1915(e)(2)(B)(II) for failure to state a claim upon which relief can be granted, and that his amendments be denied as futile. If Lankster elects to file an objection to this Report and Recommendation, he should draft and file an objection that sets forth his challenges to the factual findings and/or legal conclusions of the undersigned.

**DONE** this the **5th** day of **March**, **2012**.

_____/S/ SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a <u>de</u> <u>novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(<u>en</u> <u>banc</u>).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[8] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de</u> <u>novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  <u>Transcript (applicable where proceedings tape recorded)</u>.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that

---

[8]Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED.R.CIV.P. 72(b)(2).

transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **5th** day of **March, 2012.**

_____/s/SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**